IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 05-cv-242-MSK-MEH

TERRI CRANDALL and
JO ANN HUBBARD,

      Plaintiffs,

v.

THE CITY AND COUNY OF DENVER, COLORADO
d/b/a The Denver International Airport, a Colorado political
subdivision,

      Defendant.

---

## PARTIES' JOINT MOTION UNDER FED. R. EVID. 702

---

The parties, through their undersigned counsel, hereby requests a determination regarding the admissibility of opinion testimony from Plaintiff's experts, Harlee Strauss and Mark Hernandez.

## OPINIONS OF HARLEE STRAUSS
## FROM PLAINTIFFS' LIST OF OPINIONS

**Opinion 1**

1.    Indoor air quality problems in Concourse B at the Denver International Airport (DIA) pose a significant risk of adverse health effects to employees and workers at DIA.

    **Objection to Opinion 1.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.  Employees at DIA have experienced significant adverse health effects as a result of indoor air quality problems in Concourse B.

**Objection to Opinion 1.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.

3.  These health effects are frequently associated with odors described in several ways, including a gassy/sewage/sulfur type smell.

**Objection to Opinion 1.3:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.

4.  These adverse health effects primarily occur immediately or shortly after the onset of exposure (based on smell or location).

**Objection to Opinion 1.4:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

5.  Some effects disappear after the employees or workers leave the Concourse or when the intensity of exposure (based on odor) diminishes; others may have resulted in long term adverse conditions.

**Objection to Opinion 1.5:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

7.     The air quality at locations in Concourse B continues to pose a significant risk of adverse health effects and threatens more severe effects on an episodic basis.

**Objection to Opinion 1.7:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

8.     Many of the adverse health effects are consistent with irritant effects.

**Objection to Opinion 1.8:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.

9.     Exposures to the indoor air contaminants may result in long-term health effects.

**Objection to Opinion 1.9:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.

10.    While the sewer-sulfur smell often is present at a low level throughout Concourse B, several locations have been associated with more intense odors and/or more severe health effects. These include, but are not limited to, the Red Carpet Rooms, the podium at the

boarding door at B31, gates B27, B32, and B33, the west wheelchair room near B-24, several kiosks at the gates, the mail sort room in the basement, and certain stairwells.

**Objection to Opinion 1.10:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 2** (incorrectly labeled as Opinion 3 on Plaintiff's list of opinions)

1.      The indoor air quality problems in Concourse B result from degradation of discarded deicing fluids.

**Objection to Opinion 2.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      Employees are exposed to the degradation products of deicing fluids by multiple pathways, including glycol-contaminated water runoff into the building, vapor emissions from the sumps, and vapor intrusion.

**Objection to Opinion 2.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.      The episodic intense odors and irritation are due to bacterial "boom and bust" cycles that are caused by changing conditions such temperature, oxygen content, or nutrient availability in the glycol-contaminated water inside the building.

**Objection to Opinion 2.3:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

4.      Vapor intrusion contributes to the low level odors and irritation reported throughout the building.

**Objection to Opinion 2.4:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

10.     The vapor phase degradation products are entrained into the indoor air, such as that of Concourse B.

**Objection to Opinion 2.10:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

11.     The entrainment is direct, for example, when the degradation takes place in water inside the building, such as in the sumps or the gutters that were installed to direct the glycol containing runoff to sumps.

**Objection to Opinion 2.11:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

12.     The entrainment is also indirect, via vapor intrusion from the groundwater and soil gas in the vicinity of the Concourse into the basement either through cracks or breaks in the cement or through the porous building materials.

**Objection to Opinion 2.12:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

13.     Vapor intrusion into the building is enhanced by the large number of preferential migration pathways (utility trenches, fuel line trenches, etc) that are located throughout the area; these will facilitate the migration of soil gas in the area into the building, and the unsealed passages of utilities through the foundation will facilitate its entrance into the building itself.

**Objection to Opinion 2.13:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

14.     Factors indicating vapor intrusion are:

- Structural conditions and infrastructure such as utility trenches that support and enhance vapor intrusion are present;

- ADF-containing storm water is likely present in the porous stone bedding surrounding storm water pipes, which requires further testing and investigation; and

- The groundwater is contaminated with ADF and its degradation products.

**Objection to Opinion 2.14:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

15. Vapor flow is enhanced into buildings through preferential migration pathways, such as the backfill from utility trenches. The backfill in the many utility trenches, including trench drains, deicing waste lines, domestic water, electric, telecommunication, jet fuel, natural gas, petro, deicing chemicals, airfield lighting, non-potable water, and FAA communications, forms preferential migration pathways for the vapors emitted from the groundwater and soil, or the backfill itself, enhancing their entry into the building. The importance of these preferential migration pathways is further increased because the comparatively impermeable thick concrete (17-21") apron is above these structures and bedrock or clay exist below these structures.

**Objection to Opinion 2.15:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 3** (incorrectly labeled as Opinion 4 on Plaintiff's list of opinions)

1.   Indoor air quality (IAQ) data collected by DIA and/or its consultants to date are inadequate to identify air contaminants associated with ADF degradation.

   **Objection to Opinion 3.1:**

   Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.   The IAQ investigations for chemical contaminants generally include screening level instruments, with detection limits in the parts per million (ppm) range, for hydrogen sulfide, carbon dioxide, carbon monoxide, and non-specific volatile organic chemicals (VOCs). Several of them, discussed below, also included analyses that could detect individual organic chemicals, although usually not glycol degradation products such as propionic acid and propionaldehye. Many of the DIA investigations were initiated in response to odor and/or health concerns, and were conducted in appropriate locations. However, with a few exceptions, the episodic intense odors were not observed during the sampling. In those that were, hydrogen sulfide was detected at ppm levels.

   **Objection to Opinion 3.2:**

   Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.      Several sampling episodes appear to have included time periods when odors or irritation effects were intense. These include the 1K room investigation on May 11, 1995 (UAL 08820-08829), several gate kiosks and the baggage conveyor on May 1, 1995 (UAL-007567-007578), and red carpet room west on 8/13-22/01 (CRAN6702-6732). However, chemical specific air monitoring with appropriate limits of detection, was not conducted during the time periods.

**Objection to Opinion 3.3:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

4.      The 1K room investigation did not include sampling for glycol degradation products other than formaldehyde and H2S. The method used for formaldehyde (Drager tube) had a high limit of detection (0.2 ppm) compared to levels at which irritation may be felt. For example ACGIH (2001) recognizes that its ceiling value of 0.3 ppm is not protective (against irritation) of the 10-20% of the worker population responsive to formaldehyde at levels below 0.25 ppm. Moreover, acid and aldehyde biodegradation products in addition to formaldehyde will contribute to irritation, and must be measured and accounted for in the air quality investigation that is required to address the imminent and substantial endangerment presented.

**Objection to Opinion 3.4:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods

and is based upon insufficient facts and data.

**Opinion 5** (incorrectly labeled as Opinion 6 on Plaintiff's list of opinions)

1.      Multiple lines of evidence indicate that degradation products of aircraft deicing fluid, which has propylene glycol as its principle component, result in health effects experienced by employees in Concourse B and pose a significant risk of further health effects. These include:

-      the demonstration of complete exposure pathways in which glycol biodegradation products enter indoor air in Concourse B;

-      the similarity of odors to the known odor of degrading deicing fluid;

-      the similarity of symptoms of employees or workers exposed to degrading deicing fluid where glycol has been detected in water with those experienced inside other areas of terminal B, including the basement and concourse areas; and

-      the toxicological properties of biodegradation products of propylene glycol (and ethylene glycol).

**Objection to Opinion 5.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      The pathways by which glycol degradation products can enter into the basement of Concourse B include: 1) volatile intrusion of vapors into the basement and 2) direct emissions from glycol contaminated water in the basement including water in sumps, water in the gutters, and water on the walls, floors and anywhere else that water seeping into

the building may come to be located.

**Objection to Opinion 5.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.    These emissions result in exposure to individuals in the basement areas, and migrate to other levels in the Concourse via elevator shafts, stairwells or the HVAC system.

**Objection to Opinion 5.3:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

4.    Vapors are emitted to ramp level structures via glycol-contaminated water inside underground portions of the structures.

**Objection to Opinion 5.4:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

10.   The short chain aldehydes, alcohols and organic acids along with reduced sulfur containing compounds such as hydrogen sulfide, all have irritant properties that are consistent with the reported adverse health effects related to irritation of eyes, nose, throat, and lungs.

**Objection to Opinion 5.10:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

11.      Higher concentrations of irritants typically produce stronger responses, including burning sensations and at concentrations higher still could be corrosive; causing scarring and other permanent damage.

**Objection to Opinion 5.11:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

12.      Acute exposures of workers to propionic acid has resulted in mild to moderate skin burns, mild eye redness and mild cough and asthmatic response.

**Objection to Opinion 5.12:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

13.      In addition to irritation or corrosive effects, several of these chemicals cause other adverse impacts.

**Objection to Opinion 5.13:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 6** (incorrectly labeled as Opinion 7 on Plaintiff's list of opinions)

1.      The current conditions at Concourse B present an imminent and substantial endangerment to human health and the environment.

   **Objection to Opinion 6.1:**

   Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.      Continued or increased gate deicing will increase the risk to health and the environment because it will result in additional glycol available for degradation and subsequent exposure to its toxic degradation products throughout the Concourse which will further compound an already uncontrolled problem.

   **Objection to Opinion 6.3:**

   Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

4.      Airport workers, airline employees and the general public, including many sensitive receptors, are currently being exposed to the biodegradation products of propylene glycol-based aircraft deicing fluid throughout Concourse B at levels that pose risks to health and welfare,

   **Objection to Opinion 6.4:**

   Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

5.      The exposure pathways are complete as defined by EPA risk assessment methodologies.

**Objection to Opinion 6.5:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

6.      The biodegradation products include hydrogen sulfide, and short chain organic acids, aldehydes, and alcohols.

**Objection to Opinion 6.6:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

7.      These chemicals are toxic; many are irritants at some level and corrosive at higher concentrations.

**Objection to Opinion 6.7:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

8.      The existing exposure to chemicals and the toxicity of these chemicals clearly constitute a risk of harm to human health, even though current IAQ measurements obtained to date do not permit quantification of the risk.

**Objection to Opinion 6.8:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

9.     The risk includes irreversible effects of long term exposure, such as carcinogenicity and

reversible effects from short term exposure such as irritation and headaches.

**Objection to Opinion 6.9:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this

opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods

and is based upon insufficient facts and data.

10.    The current conditions at the airport go beyond the "may present a risk of harm"

standard; they present an actual harm and actual endangerment to human health.

**Objection to Opinion 6.10:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this

opinion.  Dr. Strauss's opinion is not the product of reliable principles and methods and is

based upon insufficient facts and data.

11.    On-going air quality problems in Concourse B have resulted in reversible effects such as

irritation and headaches and may result in long lasting effects such as asthma.

**Objection to Opinion 6.11:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this

opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods

and is based upon insufficient facts and data.

12.    These health risks and effects are due to exposure to degrading ADF, notably glycols.

**Objection to Opinion 6.12:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

### OPINIONS FROM DECLARATION OF HARLEE STRAUSS

**Declaration Para. 5:**

1.  The current conditions at Concourse B are presenting, or may present, an imminent and substantial endangerment to human health due to exposure to chemicals resulting from the biodegradation of aircraft deicing fluid.

    **Objection to Opinion 5.1:**

    Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.  This opinion is based on the application of US EPA risk assessment methodology to recent and current conditions in Concourse B of Denver International Airport.

    **Objection to Opinion 5.2:**

    Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 10**

1.  A quantitative risk assessment utilizes dose-response factors, such as a cancer slope factor for carcinogens, and a reference does or reference concentration for non-carcinogens.

    **Objection to Opinion 10.1:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      Many of these dose-response factors have been developed to evaluate long term exposures (chronic, years), and must be used cautiously for situations in which there is episodic exposures lasting in the minutes to days range.

**Objection to Opinion 10.2:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 12**

1.      Insufficient chemical contamination data have been collected to conduct a quantitative endangerment assessment at Concourse B.

**Objection to Opinion 12.1:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      There are sufficient data available to conduct a qualitative endangerment assessment, as outlined below.

**Objection to Opinion 12.2:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 13:**

1.      Biodegradation products of aircraft deicing fluid (ADF) have been present in the soil, groundwater, sumps, gutters and air in and around concourse B.

**Objection to Opinion 13.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      In some media, such as soil and groundwater, the presence is on-going.

**Objection to Opinion 13.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.      In other media, such as air on the Concourse levels and the gutters in the basement, the presence is episodic.

**Objection to Opinion 13.3:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 14**

1.      Other biodegradation products such as propionaldehyde, propionic acid, acetaldehyde, and formaldehyde are identified based on laboratory or field studies conducted elsewhere, but have been not detected in Concourse B.

**Objection to Opinion 14.1:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.     None would have been expected to be detected based on the air quality testing conducted to date.

**Objection to Opinion 14.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.     The major deficiencies in the indoor air quality investigation conducted to date are that the air sampling capable of detecting the presence of the biodegradation products other than hydrogen sulfide and methane have not occurred during or in close temporal proximity to a reported odor event, or if it has, the sample was collected over a sufficiently long period of time that any short term exposure that could cause a health problem or present a health risk was too diluted by air from the non-exposure period to be detected.

**Objection to Opinion 14.3:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 15**

1.     The groundwater can enter the sumps, gutters, and bottom of elevator shafts in the basement of the building.

**Objection to Opinion 15.1:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.     Vapors originating in contaminated groundwater and soil outside the building can enter the basement via vapor instrusion.

**Objection to Opinion 15.2:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.     Vapors can also be emitted from contaminated water inside the building in the sumps, gutters, and elevator shafts.

**Objection to Opinion 15.3:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

4.     Once in the building, vapors can migrate to different locations in the concourse via diffusion up stairways and elevator shafts, or via the air handling system (with entry through poorly sealed joints of units in the basement.

**Objection to Opinion 15.4:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 17**

1.     Multiple locations have been identified within the building where contact with degradation products such as hydrogen sulfide have been identified based on employees' reports of adverse health effects in conjunction with the onset of a characteristic odor (see opinion 1 of expert report).

**Objection to Opinion 17.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      There are reports of other locations or events, usually near vents, where there is a sudden onset of adverse health effects in the absence of the sewer like (or rotten eggs like) hydrogen sulfur odor. These, too, may be related to the biodegradation products of ADF, as hydrogen sulfide is only formed if the biodegradation takes place in the presence of sulfur.

**Objection to Opinion 17.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 18**

1.      The data available for concourse B substantiate the presence of several "complete exposure pathways", that is, pathways that include a source, release, migration path, and contact with an individual. Thus, qualitatively, it is quite certain that exposures to biodegradation products of ADF have occurred, and may continue to occur. However, the analytical data collected to date are insufficient to quantify the amount of exposure (i.e. dose) that may occur or is occurring.

**Objection to Opinion 18:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 19**

1.      The contaminants of concern at Concourse B due to biodegradation of ADF include

hydrogen sulfide, propionaldehyde, propionic acid, acetaldehyde, and formaldehyde.

   **Objection to Opinion 19.1:**

   Dr. Strauss lacks the knowledge, skill, experience, training or education to express this

   opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods

   and is based upon insufficient facts and data.

2.      These compounds can all cause irritation of eyes, nose, throat, and lungs.

   **Objection to Opinion 19.2:**

   Dr. Strauss lacks the knowledge, skill, experience, training or education to express this

   opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods

   and is based upon insufficient facts and data.

3.      Higher concentrations of irritants typically produce stronger responses, including burning

   sensations, and at concentrations higher still could be corrosive; causing scarring or

   permanent damage.

   **Objection to Opinion 19.3:**

   Dr. Strauss lacks the knowledge, skill, experience, training or education to express this

   opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods

   and is based upon insufficient facts and data.

**Declaration para. 20**

1.      In addition to irritation or corrosive effects, several of these chemicals cause other

   adverse impacts.   Symptoms of chronic low level exposure to hydrogen sulfide include

headaches, fatigue, dizziness, irritability and loss of libido (ACGIH 2001).  Exposure to higher levels of hydrogen sulfide, even for brief periods, can cause extensive loss of olfactory neurons (ACGIH 2005).  Formaldehyde is a suspected human carcinogen and a sensitizer, a type of allergic reaction (ACGIH 2001).

**Objection to Opinion 20.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 22**

1.   This integration indicates that there are complete exposure pathways by which toxic chemicals formed by the biodegradation of ADF in soils and groundwater can come into contact with individuals located in Concourse B.

**Objection to Opinion 22.1:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.   The presence of complete exposure pathways to toxic chemicals leads to the conclusion that conditions at Concourses B present or may present an imminent and substantial endangerment to human health.

**Objection to Opinion 22.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 24**

1.      The (US) National Advisory Committee for Acute Exposure Guidelines (AEGLs) proposed several short term exposure guideline values for hydrogen sulfide in a Federal Register Notice dated March 15, 2000 (65 FR14185).   The AEGL-1 value for non-disabling health effects is proposed to be 0.03 ppm for 10, 30, 1 hour, 4 hour, and 8 hour exposures.   These health based values are based on persistent odor, eye and throat irritation, headache, and nausea that was reported in humans exposed to this concentration.   These AEGL-1 values are 20 times higher than the RfC, but remain at the mean odor threshold.   Thus, comparisons of likely exposure concentrations (based on odor thresholds rather than analytic data) and health based values for short exposure durations, indicate that the concentration of hydrogen sulfide exceeds health based chemical specific acceptable levels for reasonably maximally exposed individuals in Concourse B.

   **Objection to Opinion 24.1:**

   Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 25**

1.      The conclusion that conditions in Concourse B present or may present an imminent and substantial endangerment to human health is further reinforced by analytical measurements of hydrogen sulfide obtained during the intense odor episode in the Red Carpet room in 2001 where hydrogen sulfide was detected above 1 ppm on two different

days (maximum of 2.7 ppm).  This proves that there had been substantial endangerment in the past.

**Objection to Opinion 25.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.    The consistency between certain adverse health effects that are continuing to recur, as reported by United employees during their depositions, and the known toxicological effects of hydrogen sulfide and other contaminants also supports the presence of concentrations of hydrogen sulfide and other contaminants at levels that cause adverse effects and thus present or may present an imminent and substantial endangerment.

**Objection to Opinion 25.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion.   Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 26**

1.    There is little uncertainty that hydrogen sulfide is present, at least episodically, based on characteristic odors reported by many individuals and from the limited analytical data that are available.

**Objection to Opinion 26.1:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.  During most exposure episodes, the concentration of hydrogen sulfide can only be estimated based on odor, which indicates a minimum level that is present (typical odor thresholds), but not the actual level, which is most likely higher than the mean odor threshold of 0.03 ppm.

**Objection to Opinion 26.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 27**

1.  There is also little uncertainty that there is vapor intrusion of the products of ADF biodegradation into the basement of Concourse B based on the physical conditions at the Concourse and widely accepted models for vapor intrusion.

**Objection to Opinion 27.1:**

Dr. Strauss's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.  The distribution of contaminates through the HVAC system is also a source of uncertainty, although the reports of customer service representatives and others clearly indicate that this is a probable route through which ADF degradation products travel.

**Objection to Opinion 27.2:**

Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 28**

1.     The presence of complete exposure pathways to toxic chemicals released from soil and groundwater contaminated with biodegrading ADF leads to the conclusion that conditions at Concourse B present or may present an imminent and substantial endangerment of human health.

   **Objection to Opinion 28:**

   Dr. Strauss lacks the knowledge, skill, experience, training or education to express this opinion. Dr. Strauss's opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

<u>OPINIONS OF MARK HERNANDEZ</u>
<u>FROM PLAINTIFFS' LIST OF OPINIONS</u>

**Opinion 1**

1.     The foundation, seepage and industrial waste collection system in and around the Concourse B basement was not designed to contain and manage actively biodegrading fluids. Some industrial waste sumps are microbiologically active and capriciously liberate volatile compounds that include noxious sulfides and/or alkane thiols. At least one major mechanism catalyzing this condition is the commingling of ADF-containing runoff with sulfate, in a collection/sump system that can be rapidly induced into an anaerobic condition by the high oxygen demand of ethylene and propylene glycol.

   **Objection to Opinion 1:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 2**

2.    Blooms of microbiological activity occur in the collection/sump system in response to the following factors:  seasonal inputs of ADF runoff and seepage, residence time of fluids, temperature of fluids, and retention of biomass associating with the pourus media (sand and sediment) filling the sump base.

**Objection to Opinion 2:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 4**

4.    Because sumps that store foundation drainage and seepage are collocated in mechanical rooms housing HVAC blowers, and are adjacent to stairwells, elevator shafts and employee work areas, volatile compounds liberated from biological activity in these sumps migrate into public/employee areas with inter-room diffusion, advection and forced ventilation.

**Objection to Opinion 4:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 5**

5.    Available evidence demonstrates that a cohort of point and non-point sources is generating noxious gasses in Concourse B, fed, in part, by deicing fluid.

**Objection to Opinion 5:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 6:**

6.      The potential for aerobic or anaerobic biodegradation of ADF runoff has been well documented under a broad range of environmental conditions, including those observed here.  Degradation of these wastes generates dangerous and/or flammable byproducts which include, but are not limited to, hydrogen sulfide, carbon disulfide, aldehydes, short chain alcohols, fatty acids, alkane thiols, and methane.  Given the scope of this problem, and the existing infrastructure challenges, mitigation efforts applied to date have not adequately contained this situation.

**Objection to Opinion 6:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 8:**

8.      Sanitary engineering calculations show there are realistic scenarios to generate dangerous levels of biogenic gasses from the collection/sump system in the DIA Concourse B Basement;  local infrastructure,  HVAC performance/operations and sensitivity of receptors dictate extent.

**Objection to Opinion 8:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 9**

9.   The combination of biological, infrastructure and environmental features of the foundation/seepage collection and sump systems, may pose imminent and substantial dangers to persons in Concourse B.

   **Objection to Opinion 9:**

   Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 10**

10.   Given engineering acknowledgements and complaint history, and the fact this is a high-density public setting with sensitive populations, remediation, monitoring and safety practices should be implemented to safe guard employees and the public against this obvious and mitigable exposure risk.

   **Objection to Opinion 10:**

   Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Opinion 11**

11.   Many work areas and thoroughfares in the basement of Concourse B are compromised by structural and geotechnical damage which has facilitated and continues to facilitate extensive water intrusion.   It is well documented and widely accepted that water infiltration of common building materials (particularly drywall) supports microbial growth and increases risk of airborne microorganism exposures.   In addition to water,

seepage containing ADF likely exacerbates the microbial growth on building materials by providing a readily degradable source of organic carbon.

**Objection to Opinion 11:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

**OPINIONS FROM DECLARATION OF MARK HERNANDEZ**

**Declaration para. 5**

1.    It is my opinion that, in light of the compromised Concourse B infrastructure and design, as well as the lack of necessary safeguards, the continued use of ADF and other contaminants in and around Concourse B may present an imminent and substantial endangerment to human health.

 **Objection to Opinion 5.1:**

Dr. Hernandez lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Hernandez opinion also is not the product of reliable principles and methods.

**Declaration para. 6**

1.    As a result of infrastructure failures in and around Concourse B, the foundation, seepage and industrial waste collection system in the Concourse B basement contains biodegrading ADF and other contaminates.

 **Objection to Opinion 6.1:**

Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      At least one major mechanism catalyzing this condition is the commingling of ADF-containing runoff with sulfate, in a collection system that can be rapidly induced into an anaerobic condition by the high oxygen demand of ethylene and propylene glycol.

**Objection to Opinion 6.2:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 7**

1.      Blooms of microbiological activity occur in the collection system in response to the following factors: seasonal inputs of ADF runoff and seepage, residence time of fluids stored in the system, temperature of fluids stored in the system, and retention of biomass associating with the pourus media (sand and sediment) filling collection sumps.

**Objection to Opinion 7.1:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 8**

1.      The quality of odor described in many employee complaints, the symptoms reported, as well as reports from recent emergency response events is consistent with noxious diogenic gases generated from heterotrophic sulfate reduction.

**Objection to Opinion 8.1:**

Dr. Hernandez lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Hernandez opinion also is not the product of reliable principles and methods.

2.      The respiratory precursors for this type of biological activity, sulfate, was present in

extremely high concentrations (>1000 mg/L) in two of the sumps, likely due to the

ubiquitous dissolution of gypsum dry wall board into the seepage collection system and

on the basement floor – as was dissolved sulfide.

**Objection to Opinion 8.2:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is

based upon insufficient facts and data.

3.      Even with nominal levels of glycol present, the industrial waste collection/sump systems

have the potential to create dangerous conditions near where their off gases diffuse or are

inadvertently vented.

**Objection to Opinion 8.3:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is

based upon insufficient facts and data.

**Declaration para. 9**

1.      Because sumps that store foundation drainage and seepage are collocated in mechanical

rooms housing HVAC blowers, and are adjacent to stairwells and elevator shafts that

connect the basement with the open concourse, volatile compounds liberated from

anaerobic biological activity in these sumps likely migrate in significant concentrations

into public areas and employee work areas with inter-room advection and forced

ventilation.

**Objection to Opinion 9.1:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 10**

1.    Available evidence demonstrates that a cohort of sources are generating noxious gasses in the basement of Concourse B, fed, in part by ADF.

   **Objection to Opinion 10.1:**

   Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.    This phenomena is logically extended to reaches of the collection system that serve to move ADF contaminated groundwater and seepage as well as ADF runoff trapped in other conduits and vaults.

   **Objection to Opinion 10.2:**

   Dr. Hernandez's opinion is not the product of reliable principles and methods and is based upon insufficient facts and data.

3.    The archives of employee complaints are obviously consistent with exposure to the byproducts of the anaerobic biodegradation of ADF – particularly sulfate reduction, which is the result of intense and sustained microbiological activity.  The salient theme common to most complaints includes a qualitative description of sewer gas odors, or rotting eggs with a strong, repulsive and often nauseating response.  These are the classic responses induced by biogenic sulfides and thiols.

   **Objection to Opinion 10.3:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 11**

1.      Given the scope of this problem, the existing infrastructure challenges, mitigation efforts applied to date have not adequately contained this situation.

**Objection to Opinion 11.1:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 12**

1.      Sanitary engineering calculations show there are realistic scenarios to generate dangerous levels of biogenic gasses from the collection/sump system in the DIA Concourse B Basement (discussed above); local infrastructure, HVAC performance/operations and sensitivity of receptors dictate extent.

**Objection to Opinion 12.1:**

Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

2.      The combination of biological, infrastructure and environmental features of the foundation/seepage collection and sump systems, may pose imminent and substantial dangers to persons in Concourse B.

**Objection to Opinion 12.2:**

Dr. Hernandez lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Hernandez opinion also is not the product of reliable principles and methods.

**Declaration para. 15**

1.  Both monitoring periods produced data sets that were severely limited in their statistical power and deductive power, because of the simple fact that they were not longitudinal. The chemical and biological samples were predominantly collected in a grab sample paradigm, through an insignificant timeframe that was not capable of determining chronic occupational exposure of critical IAQ parameters to airport / airline employees.  Even though some composite sampling was performed by CTEH using personal and real-time samplers, it was too limited to yield any conclusive exposure information.

   **Objection to Opinion 15.1:**

   Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 17**

1.  The numbers and distributions of the sampling sites were not on a scale large enough to approach a reasonably comprehensive investigation of occupational exposure given the numbers of hypersensitivity-type responses reported.

   **Objection to Opinion 17.1:**

   Dr. Hernandez' opinion also is not the product of reliable principles and methods and is based upon insufficient facts and data.

**Declaration para. 19**

1.      Given the ADF infiltration history in and around Concourse B, it is likely that this event

was associated with microbiological activity induces by runoff containing fugitive ADF.

   **Objection to Opinion 19.1:**

   Dr. Hernandez' opinion also is not the product of reliable principles and methods and is

based upon insufficient facts and data.

**Declaration para. 20**

1.      Management practices for deicing near Concourse B should be changed to eliminate or

minimize gate-associated application.

   **Objection to Opinion 20.1:**

   Dr. Hernandez lacks the knowledge, skill, experience, training or education to express

this opinion.  Dr. Hernandez opinion also is not the product of reliable principles and

methods.

2.      If deicing must occur near the Concourse, specialized vehicles (commercial vacuum

trucks) should be employed to immediately remove ADF overspray, airframe runoff, and

any concentrated ADF-containing runoff in the immediate application area that has

potential to become fugitive (i.e. not recovered by drains).

   **Objection to Opinion 20.2:**

   Dr. Hernandez lacks the knowledge, skill, experience, training or education to express

this opinion.  Dr. Hernandez opinion also is not the product of reliable principles and

methods.

3.     Restore and retrofit HVAC systems, to carefully isolate ventilation flow from the area in proximity of sumps and other potential sources, which house HVAC equipment.

**Objection to Opinion 20.3:**

Dr. Hernandez lacks the knowledge, skill, experience, training or education to express this opinion.  Dr. Hernandez opinion also is not the product of reliable principles and methods.

**<u>Time Requested for Hearing</u>**

The parties anticipate that the admissibility of the 75 opinions of Dr. Harlee Strauss and 29 opinions of Dr. Mark Hernandez can be determined in a one-day hearing.

DATED this 2nd day of November 2006.

Respectfully submitted,

s/ Fritz Ganz

_____
Brian D. Gonzales          #29775
Fritz Ganz                 #31912
John D. Fognani
of FOGNANI & FAUGHT, PLLC
1700 Lincoln Street, Suite 2222
Denver, CO  80203
303-382-6200
bgonzales@fognanilaw.com
fganz@fognanilaw.com
jfognani@fognanilaw.com

ATTORNEYS FOR PLAINTIFFS

s/ Andrew J. Carafelli

_____
Andrew J. Carafelli          #25071
of HALL & EVANS, L.L.C.
1125 - 17th Street, Suite 600
Denver, CO  80202
303-628-3300
carafellia@hallevans.com

ATTORNEYS FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE (CM/ECF)**</u>

      I HEREBY CERTIFY that on the 2nd day of November 2006, I electronically filed the foregoing **PARTIES' JOINT MOTION UNDER FED. R. EVID. 702** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

John D. Fognani, Esq.
Brian D. Gonzales, Esq.
Fritz Ganz, Esq.
FOGNANI & FAUGHT, PLLC
1700 Lincoln Street, Suite 2222
Denver, CO 80203
E-mail:   jfognani@fognanilaw.com
         bgonzales@fognanilaw.com
         fganz@fognanilaw.com

and hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participant in the manner (mail, hand delivery, etc.) indicated by the non-participant's name:

Michael Childress, Esq.     (U.S. Mail)
Michael Duffy, Esq.
Thomas J. Loucks, Esq.
CHILDRESS DUFFY & GOLDBLATT, LTD.
515 North State Street, 22nd Floor
Chicago, IL 60610
E-mail: mchildress@childresslaw.com
     mduffy@childresslaw.com
     tloucks@childresslaw.com

                         s/ Karen E. Reynolds, Secretary____
                         Andrew J. Carafelli, Esq.
                         Hall & Evans, L.L.C.
                         1125 - 17th Street, Suite 600
                         Denver, CO 80202-2052
                         303-628-3300
                         303-293-3231 – Fax
                         carafellia@hallevans.com