IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00242-MSK-MEH

TERRI CRANDALL and
JOANN HUBBARD,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, COLORADO,
d/b/a The Denver International Airport, a Colorado political subdivision,

    Defendant.

---

# OPINION AND ORDER GRANTING MOTIONS TO REVIEW TAXED COSTS

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for Review of Taxed Costs **(# 327)**, the Defendant's response **(# 339)**, and the Plaintiffs' reply **(# 343)**; and the Defendant's Motion for Reconsideration of Taxed Costs **(# 328)**, the Plaintiffs' response **(#340)**, and the Defendant's reply **(# 344)**.[1]

**A. Plaintiffs' Motion**

The Plaintiffs' motion challenges the Clerk's taxation of two items of costs: (i) $5,216.27 in costs of deposition transcripts, deposition costs, and photocopying costs relating to the Defendant's Motion for Summary Judgment, on which the Plaintiffs prevailed; and (ii) $47,953.45 in costs for "computerized exhibit costs" relating to Exhibit 249. In response, the

---

[1] A number of other motions are listed in the Court's docket as pending when, in fact, the entry of Judgment **(# 313)** should have resulted in the termination of these motions. The Clerk of the Court is directed to terminate the motions at Docket # 294, 295, 296, 299, and 301.

1

Defendant contends that the bulk of the costs taxed relating to the summary judgment motion involve deposition expenses that are taxable because they were necessarily obtained for use in the case as a whole, not just the summary judgment motion, and that the Plaintiffs themselves stipulated to and used the computerized version of Exhibit 249 at trial.

1. Costs of transcripts and photocopies

The bulk of the Plaintiffs' first challenge relate to transcript costs ostensibly taxed by the Clerk as being "necessarily obtained for use in the case." 28 U.S.C. § 1920. The party seeking an award of costs bears the burden of showing the necessity of the costs incurred. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002).

Whether an item is "necessarily obtained for use in the case" is a fact-based inquiry, committed to the discretion of the Court. *Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, 237 F.R.D. 659, 665 (D. Kan. 2005). For example, where a case is "sufficiently lengthy, complex, [or] contentious" that a transcript is reasonably necessary for effective and efficient trial preparation or presentation, transcription costs might be allowed. *Compare Burton v. R.J. Reynolds Tobacco Co.*, 395 F.Supp.2d 1065, 1079 (D. Kan. 2005) *with Battenfeld of America Holding Co. v. Baird, Kurtz & Dobson*, 196 F.R.D. 613, 618 (D. Kan. 2000) (finding that trial was not so complex that daily transcripts were taxable). Similarly, transcripts that are actually used at trial to impeach witnesses are generally taxable. *James v. Coors Brewing Co.*, 73 F.Supp.2d 1250, 1261 (D. Colo. 1999), *quoting Stahl v. Sun Microsystems, Inc,.* 139 F.R.D. 173, 174 (D. Colo. 1991). On the other hand, transcriptions that are obtained solely for discovery purposes or for the "convenience of counsel" are generally not taxable. *Id.*; *Manildra Milling Corp. v. Olgivie Mills, Inc.*, 878 F.Supp. 1417, 1427 (D. Kan. 1995). Transcripts that are

obtained for use in summary judgment responses, but not used at trial, may be taxed if the depositions were "actually utilized by the court in considering the defendant's motion." *James*, 73 F.Supp.2d at 1261, *citing Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir. 1997). Necessity is judged as of the time the transcription was sought, not in hindsight. *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1248 (10th Cir. 1988).

Here, the $ 5,216.27 in taxed costs challenged by the Plaintiffs consist of three components: (i) $ 771.10 for court reporter fees in obtaining transcripts; (ii) $ 4,427.05 in "costs incident to taking depositions"; and (iii) $ 18.12 in photocopying fees. *See Docket* # 322 at 3, 9, 10. The first category, $ 771.10 in court reporter fees, entailed transcription of two hearings: a June 8, 2007 ruling by the Court following a Fed. R. Evid. 702 hearing and a June 29, 2007 hearing designated only as "702 Hearing." *Docket* # 322 at 3. The Clerk's handwritten notes approving taxation of these items indicate that each transcript was cited in footnotes[2] in the Defendant's Renewed Motion for Summary Judgment **(# 267)**. The Defendant's response to the Plaintiffs' motion does not identify any other instances in which these two transcripts were used during trial.

In both instances, the transcripts were cited by the Defendant simply to summarize the Court's prior rulings as to the admissibility of certain expert opinions under Fed. R. Evid. 702. In both instances, the same information was available simply from the Court's Minute Entries **(#251, 257)**. The Court also notes that the Defendant's Renewed Motion for Summary Judgment

---

[2]The transcript of the June 8, 2007 ruling was cited in three footnotes in the Defendant's motion, all of which merely summarized the Court's ruling as to which opinions by Plaintiffs' expert Mark Hernandez were admissible under Rule 702. *See Docket* # 267 at 13-14, n. 16-18. The transcript of the June 29, 2007 ruling was cited by the Defendant to summarize the Court's Rule 702 ruling as to Plaintiffs' expert Harlee Strauss. *See Docket* # 267 at 15, n. 21

was denied in an oral ruling by the Court (# 287), which made no particular reference, explicitly or implicitly, to the matters for which the Defendant cited the transcripts. Because the transcripts duplicated information that was available elsewhere and because the Court did not consider the transcripted material in reaching its decision on the summary judgment motion, the Court finds that the transcripts of the Rule 702 ruling were not "necessarily obtained" for use in this case, and the Defendant is not entitled to taxation of the costs of obtaining them.

Next, the Clerk taxed the costs of five deposition transcripts – those of Terri Crandall, JoAnn Hubbard, Charles Williams, Carl M. Smits, and Harlee Strauss – totaling $ 4,427.05. *Docket* # 322 at 9. Four of these entries are noted by the Clerk has having been cited in the Defendant's Renewed Motion for Summary Judgment, and one is noted as having been cited in the Defendant's reply in support of that motion.

At the outset, the Court has some doubt that transcripts that are obtained solely for the purpose of making (*c.f.* responding to[3]) what is ultimately an unsuccessful motion for summary judgment can be considered "necessarily obtained" for use in the case. Generally speaking, an unsuccessful motion for summary judgment does not meaningfully advance the case in any way.[4] It does not shorten the time needed for trial nor otherwise produce a more efficient or economical outcome than would have been obtained had the motion not been made. In such circumstances, it is difficult to articulate a salutary benefit that would be obtained by allowing

---

[3]*James*, 73 F.Supp.2d at 1261, speaks specifically of taxing costs for transcripts used in responding to a motion for summary judgment.

[4]Arguably, a summary judgment motion that results in findings of undisputed facts under Fed. R. Civ. P. 56(d)(1) stands in a different light than one which is simply denied outright, but such circumstances are not presented here.

the party making an unsuccessful, and ultimately useless, motion to be tax the costs of making that motion against the other party.

Perhaps mindful of this difficulty, the Defendant argues that it seeks taxation of the deposition costs not necessarily because they were used in the unsuccessful summary judgment motion, but because they were obtained for other purposes. In this regard, the Defendant's proffer is highly generalized and conclusory:

> All of the deposition [transcripts] . . . were not purely investigative, not purely for convenience, and were necessary to the case before, during, and after summary judgment. . . Plaintiffs narrowed the list [of individuals allegedly affected] to approximately two dozen or so people that Plaintiffs intended to call a[t] trial. The depositions of these individuals were necessary to ascertain not only when and where their complaints arose, but also the condition and context in which the complaints arose. . . [T]hese facts could not be gleaned without the depositions. The depositions also provided insight into the medical care (or lack thereof) provided to Plaintiffs regarding their alleged conditions.

Docket # 339 at 9. The Court notes that, of the five depositions taxed by the Clerk, three – Mr. Williams, Mr. Smits, and Ms. Strauss – were experts proffered by the Plaintiffs for various purposes and could not be said to have been deposed for the purposes described in the quoted text. The Court has reviewed the Defendant's response to the Plaintiff's motion in detail and finds nothing therein that offers any specific explanation as to why the depositions of the Plaintiffs' experts were "necessarily obtained" for use at trial.[5] Because it is the Defendant's burden to justify its claimed costs, that failure warrants reversal of the Clerk's taxation of costs with regard to the Williams, Smits, and Strauss depositions.

---

[5] There may be a host explanations that could have justified the taking of these depositions, but the Defendant has failed to offer any.

With regard to the remaining two depositions – those of the two named Plaintiffs themselves – the analysis is slightly different. The Court accepts the Defendant's representation that it was reasonably necessary to <u>depose</u> the Plaintiffs to ascertain the nature of their complaints, the context in which they arose, and the treatment they sought. However, the need to take the deposition does not automatically translate into the need to have that deposition transcribed, and it is the transcription costs for which the Defendant seeks costs. The quoted text above does not offer any explanation as to why the Defendant found it necessary to transcribe the Plaintiffs' depositions, and in the absence of any proffered justification for doing so, the Court must find that the Defendant has failed to carry its burden of showing such costs to be taxable.[6] Accordingly, the Defendant is not entitled to taxation of these costs.

Finally, the Court turns to $ 18.12 in photocopying fees taxed by the Clerk. *Docket* # 322 at 10. The Defendant acknowledges that these costs relate solely to the unsuccessful Renewed Motion for Summary Judgment. The Defendant essentially concedes that the costs of copying an unsuccessful dispositive motion are not generally recoverable. *Citing United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 484 (D. Colo. 1997). Thus, the Court finds that these costs are not taxable.

---

[6]Once again, this is not to say that there are no circumstances in which the costs of transcribing an opposing party's deposition will be taxed; obviously, such costs are frequently awarded to the prevailing party. The Court simply observes that the Defendant here has offered no explanation whatsoever for the decision to transcribe the Plaintiffs' depositions. Moreover, in the absence of an assertion to that effect, the Court will not simply assume that the Defendant made use of the Plaintiffs' depositions during trial of this matter.

2. Costs of Exhibit 249

The Court then turns to the Plaintiffs' second contention – that the Clerk improperly taxed $ 47,953.45 in costs relating to the computerized presentation of Exhibit 249. In physical form, Exhibit 249 consisted of approximately 203 discrete drawings, many of which appear to be computer-generated blueprints or models of some aspect of Concourse B, highlighting various locations or mechanical or architectural features. Other documents in Exhibit 249 are simply photographs of various aspects of the building. The costs taxed by the Clerk relating to this exhibit consist of five entries, each billed by Fay Engineering, and generally involving tasks such as "software development," "3D modeling," and "graphics coordination." *Docket* # 322 at 5.

At trial, Exhibit 249 was received in its entirety by the stipulation of the parties. However, as the Court explained, when reviewing the evidence, the Court would not embark upon an solo journey through mountains of stipulated evidence; rather, the Court would only consider those pages of Exhibit 249 (and other stipulated exhibits) that were either specifically discussed in a witness' testimony or referred to in a party's closing argument. Transcripts attached to the Defendant's response to the motion indicate that 7 specific pages of Exhibit 249 were discussed during trial, and there is a further discussion of an unspecified page (or perhaps pages) of Exhibit 249 relating to the general layout of Concourse B. Thus, it appears that less than 5% of the total number of documents comprising Exhibit 249 were actually considered by the Court. The Defendant has represented, without contradiction, that although the material in Exhibit 294 was available in both paper form and through electronic presentation on a computer, both parties relied on the electronic form during trial.

Courts have permitted the taxation of costs for the production of demonstrative exhibits and visual aids as "exemplification and copies of papers" under 28 U.S.C. § 1920(4). *See e.g. DiBella v. Hopkins*, 407 F.Supp.2d 537, 539-40 (S.D.N.Y. 2005); *Tokyo Electron Airzona, Inc. v. Discreet Industries Corp.*, 215 F.R.D. 60, 66-67 (E.D.N.Y. 2003); *see also U.S. Industries,* 854 F.2d at 1246. However, such costs are still subject to the requirements that they be "necessarily obtained" for use in the case and that the costs incurred be reasonable. *Id.* at 540. In making these determinations, the Court should consider whether the manner in which the evidence was presented was vital to its effectiveness, or whether it was simply a convenience or extravagance. *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 149 F.Supp.2d 394, 397 (N.D. Il. 2001). Thus, information that is presented in a form that is redundant, does little to aid in the Court's understanding of the evidence, or could have been effectively presented through less expensive means are not properly taxed. *Id.* at 397-98.

Here, the Court finds that the costs incurred by the Defendant in rendering Exhibit 294 in a computerized form were neither "necessar[y]" for use in the case nor are they reasonable. First, the sum taxed entails the production of the entirety of Exhibit 249, when only a tiny fraction of that compendium was actually used at trial. There is no indication in the record that the tasks performed by Fay Engineering are severable, such that one could identify the tasks that related solely to developing the portions of Exhibit 249 that were actually considered by the Court. Because the vast majority of the exhibit was not discussed by the parties and not considered by the Court, the costs incurred by the Defendant in its production cannot be said to have been "necessarily incurred" in trying the case, nor can they be found to be reasonable.

Moreover, the fact that Exhibit 249 was also presented in paper form indicates that a computerized presentation of the material was not necessary.[7] The Defendant points to nothing that made presentation of the evidence on computer, as opposed to displaying the paper version, necessary. The fact that the Plaintiffs may have utilized the computer-based exhibit instead of referring to the paper copies in evidence is also unavailing. The Defendant does not point to an agreement between the parties that the costs of the computerized presentation would be shared, nor did it object to the Plaintiffs using the computerized version during trial. The Court applauds the Defendant's willingness to "share its technology" with the Plaintiffs, but such professional courtesy does not now entitle the Defendant to bill the Plaintiffs for the privilege of using it, especially in the large sum that the Defendants now seek.

Accordingly, the Court finds that the costs relating to the production or presentation of Exhibit 249 are not properly taxable against the Plaintiffs. The Plaintiffs' Motion to Reconsider Costs is granted, and the Court vacates the Clerk's taxation of the costs addressed therein.

---

[7]Although the Defendant's response brief appears to argue that the Defendant seeks costs relating to the manner in which Exhibit 249 was presented at trial, the description of the services for which the Clerk taxed costs suggests that it is the cost of creating Exhibit 249 in the first place that the Defendant seeks to recover. The Court assumes that the blueprint-like pages in the exhibit reflect the fruits of Fay Engineering's work in creating the 3-dimensional models and overhead views of Concourse B, and the cost of presenting this information by computer at trial added only a trivial expense over and above the substantial cost of creation. Nevertheless, even if such an argument were raised by the Defendant, the Court would reject it. For the limited purposes that Exhibit 249 was used at trial, elaborate computer-created models of Concourse B were entirely unnecessary. Simple printed diagrams or even hand-drawn sketches would have sufficed to present the necessary information. The only purposes for which the Exhibit was used was to give a sense of the approximate layout of Concourse B and the approximate proximity of various areas to each other; detailed, scale-model, 3-dimensional representations of the building were simply overkill.

**B. Defendant's Motion**

The Defendant requests reconsideration of three items of costs that the Clerk refused to tax. Specifically, the Defendant seeks: (i) $ 13,036.92 in costs relating to obtaining the transcripts of 33 depositions (and witness fees attendant to some of those depositions); (ii) $8,645.93 in photocopying costs for documents produced to the Plaintiffs; and (iii) $ 2,697.36 in costs related to obtaining medical records of the Plaintiffs' trial witnesses.

1. Deposition transcripts and witness fees

The Defendant seeks reimbursement for the costs of deposition transcripts and witness fees for 33 different witnesses. The witnesses are sorted into groups in the affidavit of Chris Mattison attached as Exhibit A to the Defendant's motion, and the Court will analyze the request as to each group listed in Mr. Mattison's affidavit.

First, the Defendant seeks the costs relating to the deposition of Mark Hernandez. The Plaintiffs' response concedes that the $ 1,289.30 relating to Mr. Hernandez's deposition should be taxed as costs, and thus, the Court awards those costs to the Defendant.

Next, the Defendants request costs for three deponents – Russ Richardson, Janell Barrilleaux, and Dan Brown. The Defendant states that it listed them as possible witnesses in its initial disclosures, as each had knowledge of the conditions inside Concourse B. All three were deposed, but only Ms. Barrilleaux testified at trial. Beyond asserting these facts and describing the uses to which the depositions were put,[8] the Defendant does not explain why it believed it was necessary to depose these witnesses and have their deposition testimony transcribed.

---

[8]For reasons discussed above, the mere fact that the Defendant used the depositions in an unsuccessful dispositive motion does not warrant an award of costs.

As discussed above, the mere fact that a potential witness was identified at some point does not compel the conclusion that it was necessary to depose that witness. Attorneys have a variety of tools available to ascertain whether a person with knowledge relevant to a case is one whose testimony should be preserved by means of a deposition. For example, many potential witnesses can be informally interviewed to ascertain whether the quality or nature of their testimony warrants the time and expense of a deposition. Written discovery can also shed light on whether a particular person has testimony worthy of a deposition. To hold that there the mere identification of a person in initial disclosures makes it "necessar[y]" to depose them, such that costs of such a deposition are automatically awarded to the prevailing party would not only discourage attorneys from pursuing these more efficient investigatory methods, but would also effectively read the "necessarily obtained" language out of § 1920.

Similarly, merely because a witness has been deposed does not compel the conclusion that it is "necessary" for counsel to obtain the transcription of that deposition. It may be that, following the deposition, neither party deems the witness necessary for trial (*e.g.* Mr. Richardson, who was not listed as a trial witness by either side). Or it may be that circumstances make it unlikely that the witness' testimony will waver at trial, such that a deposition transcript will be necessary to impeach – *e.g.* that the witness is especially credible, that the witness' testimony is heavily corroborated by other evidence and making impeachment by deposition unlikely, etc.[9] The Court is aware that, for many attorneys, ordering transcription of a deposition

---

[9]The Court recognizes that other courts have made more categorical pronouncements – for example, that transcripts of depositions of all witnesses listed on the losing party's witness list may be taxed. *See e.g. EEOC v. W & O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000). This Court is not persuaded that such categorical rules given sufficient consideration to the "necessarily obtained" language in § 1920, and thus, does not find them persuasive. In any event, such cases

11

is practically a reflexive act, but without an articulable reason why it is necessary to do so for trial purposes, the Court cannot assume necessity. Such transcription costs would not be taxable.

Here, the Defendant has not carried its burden of showing why it was necessary to obtain the deposition transcripts of Mr. Richardson, Ms. Barrilleaux, or Mr. Brown. For the reasons above, the mere fact that they were identified in initial disclosures, listed as potential trial witnesses, or even that they did indeed testify at trial does not suffice to show that it was therefore necessary to obtain their deposition transcripts. In the absence of a sufficient showing of necessity by the Defendant, the Court declines to tax these costs.

Next, the Defendant seeks the costs of deposing Don Larson. Mr. Larson was a witness that was disclosed belatedly by the Plaintiffs on the eve of trial, and rather than exclude his testimony, the Court allowed the Defendant to cure the prejudice of the late disclosure by deposing Mr. Larson. Unlike other deposition transcripts, the Court finds that Mr. Larson's deposition transcript was necessarily obtained by the Defendant for use in this case. As discussed above, attorneys normally have a period of time after deposing a witness to reflect upon and weigh the merits of obtaining a transcription of that deposition. The Plaintiffs' late disclosure of Mr. Larson on the eve of trial deprived the Defendant of that opportunity. Without having had a reasonable opportunity to consider the question, the Defendant's decision to obtain Mr. Larson's deposition simply out of an abundance of caution is not a decision that the Court

---

only reflect appellate courts affirming that awarding such costs was not an abuse of the trial court's discretion; absent controlling authority from the 10th Circuit indicating that it would be an abuse of discretion to <u>not</u> award costs in this manner, this Court will apply its more considered view of the phrase "necessarily obtained."

can fault. Thus, the Court finds that costs in the amount of $ 677.60 are taxable against the Plaintiffs.

Next, the Defendant lists 18 witnesses that were identified as possible witnesses by the Plaintiffs' initial disclosures, in that each had knowledge of the air conditions in Concourse B. Each of these witnesses, having only anecdotal testimony to give in what was largely a forward-looking case, are the epitome of witnesses whose testimony could be addressed in the first instance by informal interviews, rather than formal depositions. The Defendant states that "counsel for the Plaintiffs treated these witnesses as his 'clients' in terms of Defendant's discovery efforts," which this Court understands to mean that the Plaintiffs discouraged these witnesses from submitting to informal interviews with the Defendant. This assertion, factually unchallenged in the Plaintiffs' response,[10] is sufficient to show that it was necessary for the Defendants to compel these witnesses to give testimony via deposition. Thus, the Court finds it appropriate to tax each of the witness fees for those depositions against the Plaintiffs. The total witness fees listed are $ 520.84, and that sum is properly taxed against the Plaintiffs.

However, for essentially the same reasons discussed above, the Court finds that the Defendant has failed to show that it was necessary to obtain the transcription of most of these depositions in anticipation of trial – indeed, only two of the 18 witnesses even testified at trial. Mr. Mattison's affidavit does attest that the depositions of Karen Rewolinski and Debra Kuckkahn were actually used at trial to impeach those two witnesses, a fact that the Plaintiffs do not dispute. Courts have often recognized that the actual use of a deposition transcript at trial is

---

[10]The Plaintiffs' brief asserts that "there was nothing to prevent the Defendant from discussing the case with every witness," but does not tender an affidavit or other evidentiary material that disputes Mr. Mattison's implicit assertion.

evidence of it having been "necessarily obtained." *See e.g. Summit Technology, Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1380 (Fed. Cir. 2006); *W & O, Inc.*, 213 F.3d at 621. Thus, the Court will tax the costs of Ms. Rewolinski and Ms. Kuckkahn's affidavits against the Plaintiffs. Those costs amount to $ 658.40.

Next, the Defendant seeks the cost of deposing Robert Nixon. Mr. Nixon was identified as a potential witness in the Defendant's initial disclosures and deposed by the Plaintiffs. Although the Plaintiffs listed Mr. Nixon as a potential trial witness, he did not testify. Based on the discussion above, the Court finds that the mere fact that Mr. Nixon was listed as a potential trial witness is not sufficient to carry the Defendant's burden of showing that his deposition and the transcription thereof were necessary. In the absence of such a showing, the Court declines to tax those costs.

The Defendant also seeks costs relating to two witnesses identified by the Defendant, deposed by the Plaintiffs, and listed by the Defendant as potential trial witnesses. The Defendant merely states that it "ordered copies of the depositions as part of its preparation for trial." For the reasons stated previously, this mere assertion is insufficient to show that the transcripts were "necessarily obtained," rather than secured solely for the convenience of counsel. These costs are denied.

The Defendant seeks the costs of depositions and transcripts for 7 witnesses listed in the Plaintiffs' initial disclosures and deposed by the Defendant. The Defendant explains that it ordered transcripts of these depositions because it "believed that the witnesses might be called at trial," but ultimately, they were not listed as potential witnesses in the parties' pretrial disclosures. Based on the discussion above, the Court finds that the Defendant has not shown

that taking the depositions of these witnesses was necessary, nor that the transcripts were necessarily obtained. These costs are denied.

Accordingly, the Defendant is entitled to taxation of additional deposition and transcript costs in the amount of $ 3,146.14.

### 2. Copying costs

The Defendant requests $ 8,645.93 in costs of photocopying numerous documents responsive to the Plaintiffs' discovery requests. The Plaintiffs respond with an argument that documents produced in discovery do not fall within "fees for . . . copies of papers necessarily obtained for <u>use in the case</u>" under 28 U.S.C. § 1920(4) (emphasis added), and that *James* stands for the proposition that copying costs for discovery materials are "investigative" and not subject to taxation as costs. 73 F.Supp.2d at 1260.

The Plaintiffs cite two cases as their authority for the proposition that copying costs for producing discovery cannot be taxed as costs. First, they cite *Wharf* for the proposition that the term "use in the case" in § 1920(4) is limited to costs incurred in presenting evidence at trial. In *Wharf*, Judge Kane refused to tax costs for copying "pleadings and supporting exhibits" under §1920(4). He relied primarily on 6 <u>Moore's Federal Practice</u>, ¶ 54.77(6), for the proposition that "the phrase 'for use in the case' refers to materials actually prepared for use in presenting evidence to the court." 174 F.R.D. at 484. This Court finds *Wharf* unpersuasive on the instant issue for several reasons. First, the case did not purport to decide whether copying costs for <u>discovery</u> were taxable; the issue there entailed copying "pleadings and supporting exhibits." Unlike pleadings and exhibits, which are voluntarily drafted by the filing party, discovery responses are compelled productions, and their contours are dictated in large part by the party

15

making the discovery request. Thus, the considerations in denying taxation of costs for copying pleadings and exhibits do not necessarily apply with equal force in determining whether to tax costs for producing discovery.

Second, the Plaintiffs seem to read *Wharf* to mean that "for use in the case" must mean "for use at trial." Had Congress intended to limit the taxation of costs under § 1920(4) to matters relating only to trial, it could have done so. But even assuming that *Wharf* can be read to require that the copies sought to be taxed be somehow connected to trial of the case, in the context of *Wharf*, the fact that pleadings were deemed not to be "for use in the case" does not compel the conclusion that discovery documents would be treated similarly. Pleadings may be necessary to initiate and frame up a case, but ordinarily not become substantive evidence that would be admitted at trial. Discovery responses, on the other hand, are often the stuff that substantive evidence is made of. Thus, *Wharf*'s conclusion that copying costs for pleadings are not taxable does not compel the conclusion that the costs of copying discovery may not be taxed.

The other case relied upon by the Plaintiffs is *James*. There, Judge Babcock refused to tax "costs of copies of materials obtained [from the Defendant] pursuant to disclosure and discovery responses." He found that "[t]he costs denied represented materials obtained from Defendant . . . pursuant to Rule 26(a)(1), and consisted of investigative materials generated by Coors and . . . employment files." 73 F.Supp.2d at 1260. This Court finds *James* unpersuasive as well. Most importantly, *James* does not address the situation in which a prevailing party seeks to tax the costs of complying with a discovery request served upon him by the losing

party.[11] The particular considerations in compensating the winning party for the costs of complying with the losing side's discovery demands does not appear to enter into the decision. Moreover, this Court does not read *James* as broadly as the Plaintiffs here do. Nothing in the decision appears to lay down a categorical rule that costs of copying discovery are not taxable. Indeed, the particular reasoning used by the Court in *James* is not abundantly clear.

By contrast, there appears to be ample authority for the proposition that a prevailing party's expenses in copying discovery material demanded by the losing side are properly taxed as costs. *See e.g. W &O*, 214 F.3d at 623 ("copies attributable to discovery are a category of copies recoverable under § 1920(4)"); *Alexander v. CIT Technology Financing Services*, 222 F.Supp.2d 1087, 1089 (N.D. Ill. 2002) ("photocopying charges for discovery and the court's copies of documents can be awarded"); *Schering Corp. v. Amgen, Inc.*, 198 F.R.D. 422, 428 (D. Del. 2001) ("Copying documents in response to a discovery request is, by its nature, necessary for use in preparing Schering's case. . . Unless Schering now contends that it requested unnecessary documents in prosecuting its case, it is anomalous to argue that such costs do not fall within the ambit of § 1920(4)") (citation omitted); *see also Watkins & Son Pet Supplies v. Iams Co.*, 197 F.Supp.2d 1030, 1037 (S.D. Oh. 2002) ("Courts have routinely held that a prevailing party may recover, as costs pursuant to § 1920(4), the expenses it incurs to copy

---

[11]Curiously, *James* appears to entail a prevailing plaintiff requesting taxation of copying costs for documents <u>produced by the defendant</u>. The opinion does not explain how the plaintiff incurred any costs that could be taxable in these circumstances. The Court assumes that the defendant produced the document for copying, but the plaintiff bore the cost of making the copies.

documents produced by the opposing party during discovery").[12]  In general, this Court finds this line of authority more persuasive.  One of the primary reasons for discovery is to allow a party to obtain material in the opponent's possession that might be admissible as evidence at trial.  The costs incurred by the winning side in responding to evidence-gathering requests is an expense that is logically shifted to the losing side.  Indeed, the risk of being charged with the costs of complying with one's own discovery requests serves the salutary purpose of encouraging parties to make narrow, focused discovery requests, rather than going on broad, potentially expensive, fishing expeditions.

Accordingly, the Court finds that the Defendant is entitled to taxation of the costs incurred in copying documents responsive to the Plaintiffs' discovery requests.  The Defendant has identified the total cost as $ 8,645.93.  Nothing in the Plaintiffs' response challenges this amount, and thus, the Court awards that sum to the Defendant pursuant to § 1920(4).

Finally, the Defendant requests $ 2,697.36 in costs, reflecting charges made by physicians and other health care providers in responding to the Defendant's requests for medical records of the Plaintiffs and other witnesses.  Mr. Mattison's affidavit explains the means by which the Defendant came to obtain these records, but offers no explanation of the purpose for which the records were used.  Absent some explanation as to how the records were "necessarily

---

[12]*But see Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 408 (D. Kan. 2000) ("As a general rule, prevailing parties are not entitled to recover costs incurred in responding to discovery; because the producing party possesses the original documents, such papers are not "obtained"[by the producing party] for purposes of § 1920(4)."). This Court finds *Pehr*'s reading of "obtained" to be unnecessarily cramped.  The Court in *Schering, supra,* was more correct in observing that the documents were "obtained for use in the case" by the party making the discovery request, allowing costs to be taxed in favor of the party supplying copies of those documents in response.

obtained" for use in this case, the Court is compelled to find that the Defendant obtained them solely for investigative purposes. Thus, the Court declines to tax these costs.

Accordingly, the Defendant's motion is granted in part, insofar as the Court taxes an additional $ 11,792.07 in costs against the Plaintiffs.

### C. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Review of Taxed Costs **(# 327)** is **GRANTED**. The Court **VACATES** those portions of the Clerk's taxed costs **(# 322)** discussed herein, totaling $ 53,169.72. The Defendant's Motion for Reconsideration of Taxed Costs **(#328)** is **GRANTED IN PART**, insofar as the Court finds that the costs taxed by the Clerk should be increased by $ 11,792.07, and **DENIED IN PART** in all other respects. The total costs assessed against the Plaintiffs are $ 14,457.33, and the Judgment **(# 313)** is **DEEMED AMENDED** to reflect this amount. The Clerk of the Court is directed to terminate the motions at Docket # 294, 295, 296, 299, and 301

Dated this 15th day of January, 2009

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
United States District Judge